UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 3:21-cr-00095 |
| v. | ) | |
| | ) | Judge Trauger |
| ALEXANDER FRIEDMANN | ) | |

PLEA AGREEMENT

The United States of America, through Mark H. Wildasin, United States Attorney for the Middle District of Tennessee, and Assistant United States Attorney Robert E. McGuire and defendant, Alexander Friedmann, through defendant's counsel, Manuel B. Russ, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, have entered into an agreement, the terms and conditions of which are as follows:

Charges in This Case

1.     Defendant acknowledges that he has been charged in the indictment in this case with being a felon in possession of a firearm in violation of Title 18, United States Code, Sections 922(g)(1) and 924.

2.     Defendant has read the charge against him contained in the indictment. That charge has been fully explained to him by his attorney. Defendant fully understands the nature and elements of the crime with which he has been charged.

Charge to Which Defendant is Pleading Guilty

3.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the indictment, charging him with being a felon in possession of a firearm. In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

Penalties

The parties understand and agree that the offense to which defendant will enter a plea of guilty carries the following maximum penalties: a maximum of 10 years' imprisonment, a maximum of 3 years of supervised release, a maximum $250,000 fine, and a $100 special assessment However, if defendant is determined to have at least three previous convictions of either a violent felony or a serious drug offense, then defendant would be subject to a mandatory minimum term of 15 years imprisonment, pursuant to 18 U.S.C. § 924(e)(1) and up to five years supervised release. Defendant also understands that as a result of his offense, he is subject to forfeiture of property as alleged in the indictment.

## Acknowledgements and Waivers Regarding Plea of Guilty

## Nature of Plea Agreement

4.      This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 3:21-CR-00095.

5.      Defendant understands that by pleading guilty he surrenders certain trial rights, including the following:

        a.      If defendant persisted in a plea of not guilty to the charge against him, he would have the right to a public and speedy trial. Defendant has a right to a jury trial, and the trial would be by a judge rather than a jury only if defendant, the government, and the Court all agreed to have no jury.

        b.      If the trial were a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict

2

of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent; that the government bears the burden of proving defendant guilty of the charge(s) beyond a reasonable doubt; and that it must consider each count of the indictment against defendant separately.

   c.  If the trial were held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

   d.  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence on his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

   e.  At a trial, defendant would have a privilege against self-incrimination so that he could testify or decline to testify, and no inference of guilt could be drawn from his refusal to testify.

  6.  Defendant understands that by pleading guilty he is waiving all of the trial rights set forth in the prior paragraph. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

Factual Basis

  7.  Defendant will plead guilty because he is in fact guilty of the charge contained in the indictment. In pleading guilty, defendant admits the following facts and that those facts

3

establish his guilt beyond a reasonable doubt and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

In July 2016, the Davidson County Sheriff's Office ("DCSO"), began the demolition of the Metropolitan Nashville Criminal Justice Center, located at 200 James Robertson Parkway, Nashville, Tennessee, and began construction for the Downtown Detention Center ("DDC") at the same location. On November 1, 2019, the DCSO had taken over the physical security of the DDC as the facility was being prepared to be made operational in January 2020. Surveillance cameras were being placed in the DDC beginning in July\August of 2019. At that time, construction-related work was being finalized at the facility, and thus construction workers and contract workers were on site finalizing the construction. On December 27, 2019, employees of the DCSO were inside the DDC Key Control Room. This is a secure room inside the facility which is used, in part, to house the facility keys including the keys designed for the secure areas of the facility used to house inmates. DCSO employees determined that a security ring on one set of the "secure area" keys appeared different than the others.Based on their discovery, an inventory of the facility keys was conducted by the DCSO. This inventory determined that two keys for the secure areas of the DDC facility were missing.

Subsequent review of internal surveillance video for the DDC Key Room, determined that defendant, who was wearing a yellow work vest, khaki cargo pants, and a dust mask which partially covered his face, entered the key control room where the keys were last known to be. The video captured defendant taking two DCSO two keys: one for general movement throughout the facility, and the other for the kitchen area. Defendant did not have their authorization to take the two facility keys.

4

On January 4, 2020, defendant was located on the property and apprehended by law enforcement. At the time of his arrest, defendant was dressed in a manner consistent with the employed construction workers and contractors employed during the construction of the DDC. Upon being detained, defendant had with him a hand drawn schematic of a portion of the DDC, of which he attempted to destroy by chewing up and swallowing. Defendant was able to make bond and was released on the same date, January 4, 2020.

Based on this security breach, and the aforementioned two missing security keys, the DCSO began to review historic surveillance video looking specifically for defendant. DCSO employees located, on historic surveillance video, multiple insistences where the defendant was inside the DDC without authorization. Law enforcement then went to the areas of the DDC where defendant had been observed and found several imperfections within the concrete walls of the DDC, specifically in the mortar line of the concrete wall. Further examination of the mortar lines determined that the area where the mortar grout would be, was soft and not consistent with dried mortar.

On February 10, 2020, the MNPD Crimes Scene Unit and MNPD Central Precinct Investigations conducted a consensual search of area the DCSO had previously identified as places of interest. Located within these places of interest were, among other items, a North American Arms .22 Revolver (whose serial number has been altered); ten (10) .22 caliber cartridges; a Double Tap 9mm pistol (whose serial number had been altered); six (6) 9mm Luger cartridges; a Ruger LCR .38 Revolver (whose serial number had been altered); and eleven (11) .38 caliber cartridges. Defendant was then arrested on new state charges on or about February 18, 2020 and remained in custody.

5

During the course of the investigation, investigators learned that defendant had several documents notarized at a local law office and that the law office had retained copies of those documents. An employee of the law office provided MNPD with copies of the documents defendant had notarized. Of note, was a copy of a notarized letter signed by defendant to Greg Hall, stating that in the event of defendant's untimely death, "Ferris Mar" has permission to obtain the contents to the "M Building storage area." Investigators then interviewed Hall who told them that Hall had built defendant a storage area under one of the buildings in the complex. Hall then told investigators that defendant had moved a number of black and yellow crates from that storage area the day (or the day before) defendant was arrested for the second time by state authorities.

Investigators then queried the name "Farris Mar" against a database of Tennessee driver's license information, and located one matching name. This name was Ferris Marone who had a listed address of 7862 Whites Creek Pike in Joelton, Tennessee. Investigators spoke with Marone's estranged wife who told investigators that she allowed defendant to store what he described to her as "legal documents" at her residence on Whites Creek Pike. Officers obtained and executed a search warrant for that Whites Creek Pike residence on March 20, 2020. Located in the crates, were firearms, law enforcement equipment, and ammunition including: a North American Model 22LR .22 pistol bearing serial number B59527; a Keltec model Sub-2000, 9mm caliber rifle bearing serial number EDV96; a Keltec model Sub-2000, 9mm caliber rifle bearing serial number ERV89; a Keltec model CP33 .22 caliber pistol; a Kivaari .338 caliber rifle; a Glock model 19 Gen 4 9mm pistol; a Glock model 19 9mm pistol; a Glock model 23 .40 caliber pistol; a Glock model 26 9mm pistol; a Glock model 27 .40 caliber pistol; a Henry Repeating Arms model U.S. Survival .22 LR caliber rifle; a Ruger model MKIII pistol bearing serial number 271-72237; a Ruger model MKIII pistol bearing serial number 271-88334; a Smith and Wesson model

6

Bodyguard .38 revolver; a Mossburg model 9200 12 gauge shotgun; a Keltec model KSG, 12 gauge shotgun; a Galil ACE SAR 7.62x39mm rifle bearing serial number G0003165; a Galil ACE SAR 7.62x39mm rifle bearing serial number G0007884; a Galil ACE SAR 5.56x45mm rifle; a Nemesis Arms model Vanquish .308 caliber rifle; and a Zastava Arms model PAP M92 7.62x39mm pistol.

Defendant has the following felony convictions:

- Davidson County (Tennessee) Criminal Court Case No.: 88-W-763 (Count 1); Armed Robbery; conviction date: July 24, 1989, he was sentenced the same date to 10 years' incarceration.

- Davidson County (Tennessee) Criminal Court Case No.: 88-W-763 (Count 2); Assault with the Intent to Commit First Degree Murder; conviction date: July 24, 1989, he was sentenced the same date to 10 years' incarceration.

- Davidson County (Tennessee) Criminal Court Case No.: 91-D-1743; Attempted Aggravated Robbery; conviction date: October 8, 1992, he was sentenced the same date to 9 years' incarceration.

An FBI firearm nexus analyst has reviewed the firearms recovered during the investigation and has determined that all of those firearms have crossed a state line and have previously traveled in and, therefore, affected interstate commerce.

<u>Sentencing Guidelines Calculations</u>

8.     The parties understand that the Court will take account of the United States Sentencing Guidelines (hereinafter "U.S.S.G."), together with the other sentencing factors set forth at 18 U.S.C. § 3553(a), and will consider the U.S.S.G. advisory sentencing range in imposing

7

defendant's sentence. The parties agree that the U.S.S.G. to be considered in this case are those effective November 1, 2021.

9.      The parties acknowledge that the presentence investigation report will contain a recommended offense level and criminal history calculations under the Guidelines and that the court must perform guideline calculation as part of the sentencing process. However, since this agreement is a binding agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agree that the sentence agreed to herein is an appropriate sentence regardless of the guideline calculation.

<u>Agreements Relating to Sentencing</u>

10.      This Plea Agreement is governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C). That is, the parties have agreed to jointly recommend a sentence of 72 months incarceration, less the time from February 19, 2020 to the date of sentencing in order to account for jail credit which will not be credited to the defendant by the Bureau of Prisons. Therefore, under U.S.S.G. § 5G1.3(b)(1), the parties jointly recommend a variance downward from 72 months which equals the time between February 19, 2020 and the date of sentencing. This sentence shall be concurrent with any sentence of imprisonment ordered in Davidson County Criminal Court Case Number 2020-A-405. Other than the agreed terms of incarceration, the parties ~~of incarceration,~~ *of this agreement* RPM have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes the agreed term of incarceration set forth herein, defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(d). If, however, the Court refuses to impose the agreed term of incarceration, thereby rejecting the Plea Agreement, or otherwise refuses to accept defendant's plea of guilty, either party shall have the right to withdraw from this Plea Agreement.

8

## Forfeiture of Specific Property

20.     The Forfeiture Allegation of the indictment put the defendant on notice that upon conviction of the indictment, he shall forfeit to the United States the following property because it was used to in a knowing violation of the offense:

     a.  a North American Arms .22 Revolver (whose serial number has been altered);

     b.  a Double Tap 9mm pistol (whose serial number had been altered);

     c.  a Ruger LCR .38 Revolver (whose serial number had been altered);

     d.  a North American Model 22LR .22 pistol bearing serial number B59527;

     e.  a Keltec model Sub-2000, 9mm caliber rifle bearing serial number EDV96;

     f.  a Keltec model Sub-2000, 9mm caliber rifle bearing serial number ERV89;

     g.  a Keltec model CP33 .22 caliber pistol; a Kivaari .338 caliber rifle;

     h.  a Glock model 19 Gen 4 9mm pistol;

     i.  a Glock model 19 9mm pistol;

     j.  a Glock model 23 .40 caliber pistol;

     k.  a Glock model 26 9mm pistol;

     l.  a Glock model 27 .40 caliber pistol;

     m.  a Henry Repeating Arms model U.S. Survival .22 LR caliber rifle;

     n.  a Ruger model MKIII pistol bearing serial number 271-72237;

     o.  a Ruger model MKIII pistol bearing serial number 271-88334;

     p.  a Smith and Wesson model Bodyguard .38 revolver;

     q.  a KAOS 37mm launcher;

     r.  a Mossburg model 9200 12 gauge shotgun;

     s.  a Keltec model KSG, 12 gauge shotgun;

9

     t.   a Galil ACE SAR 7.62x39mm rifle bearing serial number G0003165;

     u.   a Galil ACE SAR 7.62x39mm rifle bearing serial number G0007884;

     v.   a Galil ACE SAR 5.56x45mm rifle;

     w.  a Nemesis Arms model Vanquish .308 caliber rifle;

     x.   a Zastava Arms model PAP M92 7.62x39mm pistol;

     y.   any and all related ammunition to any of the above described firearms;

(hereinafter referred to collectively as "Subject Property").

21.     By entry of a guilty plea to the indictment, defendant acknowledges that the Subject Property is subject to forfeiture pursuant to 18 U.S.C. § 924(d)(1) by Title 28, United States Code, Section 2461(c) as it was used in a knowing violation of the offense and further agrees that the Subject Property had a substantial connection to the crime of conviction.

22.     Prior to sentencing, Defendant relinquishes all claim, title, and interest to the Subject Property and agrees to the entry of a Preliminary Order of Forfeiture forfeiting the Subject Property to the United States and further agrees to the seizure of the Subject Property so that the Subject Property may be disposed of according to law.

23.     Defendant agrees to take steps as required by the United States to pass clear title to the forfeitable assets to the United States.

24.     Defendant is unaware of any third party who has an ownership interest in, or claim to, the Subject Property and will cooperate with the United States during the ancillary stages of any forfeiture proceedings to defeat the claim of a third party in the event a third party files a claim.

25.     Defendant and the United States agree that every effort will be made to credit the value of any item forfeited against both the Order of Forfeiture and any restitution order via the remission and restoration process. However, the parties acknowledge that the ultimate discretion

10

lies with the Money Laundering and Asset Recovery Section of the U.S. Department of Justice regarding whether to grant or deny any request related to the remission or restoration process.

26.     Defendant understands that forfeiture of this property shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

27.     Defendant also agrees to waive any and all constitutional and statutory challenges to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.

<u>Presentence Investigation Report/Post-Sentence Supervision</u>

28.     Defendant understands that the United States Attorney's Office, in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing, shall fully apprise the District Court and the United States Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, as well as any related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

29.     Defendant agrees to execute truthfully and completely a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the Probation Officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and enhancement of his sentence for obstruction of

11

justice under U.S.S.G. § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

30.     This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Plea Agreement are limited to the United States Attorney's Office for the Middle District of Tennessee and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Plea Agreement.

## Entry of Guilty Plea

31.     The parties jointly request that the Court accept the defendant's plea of guilty as set forth in this agreement and enter an order reflecting the acceptance of the plea while reserving acceptance of this plea agreement until receipt of the pre-sentence report and sentencing.

## Waiver of Appellate Rights

32.     Regarding the issue of guilt, defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether he is guilty of the crime(s) to which he is agreeing to plead guilty; and (ii) trial rights that might have been available if he exercised his right to go to trial. Regarding sentencing, Defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal any sentence which includes a sentence of 72 months' incarceration (minus any jail credit-related variance). Defendant further waives all appellate rights and all collateral attacks concerning forfeiture and all matters related thereto. Defendant also knowingly waives the right to challenge the sentence imposed in any motion pursuant to 18 U.S.C. §

12

3582(c)(2) and in any collateral attack, including, but not limited to, a motion brought pursuant to

*with the exception of concurrency of the federal and state sentences, and the jail time*

28 U.S.C. § 2255 and/or § 2241, However, no waiver of the right to appeal, or to challenge the *pretrial credit awarded under*

adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of *USSG § ~~section~~ 5G1.3(b)(1)*

involuntariness, prosecutorial misconduct, or ineffective assistance of counsel. Likewise, the

government waives the right to appeal any sentence which includes 72 months' incarceration

(minus any jail credit-related variance).

## Other Terms

33.     Defendant agrees to cooperate with the United States Attorney's Office in

collecting any unpaid fine and restitution for which defendant is liable, including providing

financial statements and supporting records as requested by the United States Attorney's Office.

Defendant further agrees that any monetary penalties imposed by the Court will be subject to

immediate enforcement as provided for in 18 U.S.C. § 3613, and submitted to the Treasury Offset

Programs so that any federal payment or transfer of returned property the defendant receives may

be offset and applied to federal debts but will not affect the periodic payment schedule.

34.     Should defendant engage in additional criminal activity after he has pled guilty but

prior to sentencing, defendant shall be considered to have breached this Plea Agreement, and the

government at its option may void this Plea Agreement.

## Conclusion

35.     Defendant understands that the indictment and this Plea Agreement have been or

will be filed with the Court, will become matters of public record, and may be disclosed to any

person.

36.     Defendant understands that his compliance with each part of this Plea Agreement

extends until such time as he is sentenced, and failure to abide by any term of the Plea Agreement

is a violation of the Plea Agreement. Defendant further understands that in the event he violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Plea Agreement, or may require defendant's specific performance of this Plea Agreement.

37.     Defendant and his attorney acknowledge that no threats have been made to cause defendant to plead guilty.

38.     No promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement, and none will be entered into unless memorialized in writing and signed by all of the parties listed below.

39.     Defendant's Signature:  I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending indictment. Further, I fully understand all rights with respect to the provisions of the Sentencing Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this Plea Agreement, and I voluntarily agree to it.


Date:  8/11/22          _____
                        ALEXANDER FRIEDMANN
                        Defendant

14

40.     Defense Counsel Signature: I am counsel for defendant in this case. I have fully explained to defendant his rights with respect to the pending indictment. Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements, and I have fully explained to defendant the provisions of those guidelines that may apply in this case. I have reviewed carefully every part of this Plea Agreement with defendant. To my knowledge, defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

Date:  8/11/22

MANUEL B. RUSS
Attorney for Defendant


Respectfully submitted,

MARK H. WILDASIN
United States Attorney

By: _____
ROBERT E. MCGUIRE
Assistant U.S. Attorney

_____
BRENT A. HANNAFAN
Criminal Chief